IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD EDWARD BREST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-1184 |
| | ) Chief Judge Gary L. Lancaster |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster
Chief Judge                                          May 2 2 , 2012

I.    Introduction

Plaintiff Ronald Edward Brest ("Brest") brings this action

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial

review of the final decision of the Commissioner of Social

Security ("Commissioner") denying his applications for

disability insurance benefits ("DIB") and supplemental security

income ("SSI") benefits under Titles II and XVI of the Social

Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  The

matter is presently before the Court on cross-motions for

summary judgment filed by the parties pursuant to Federal Rule

of Civil Procedure 56.  (ECF Nos. 9 & 14).  For the reasons that

follow, Brest's motion for summary judgment (*ECF No. 9*) will be

denied, the Commissioner's motion for summary judgment (*ECF No.*

1

*14)* will be granted, and the Commissioner's final decision will
be affirmed.

## II. Procedural History

Brest protectively applied for DIB and SSI benefits on
October 28, 2008, and October 31, 2008, alleging that he had
become "disabled" on August 12, 2007. (R. at 10, 108, 112, 120,
133). The Pennsylvania Bureau of Disability Determination
denied the applications on January 7, 2009. (R. at 56, 60).
Brest responded on February 13, 2009, by filing a timely request
for an administrative hearing. (R. at 65-66). On January 20,
2010, a hearing was held before Administrative Law Judge ("ALJ")
John J. Porter. (R. at 30). Brest, who was represented by
counsel, appeared and testified at the hearing. (R. at 36-46).
Fr. Fred A. Monaco, an impartial vocational expert, also
testified at the hearing. (R. at 46-51). In a decision dated
April 15, 2010, the ALJ determined that Brest was not "disabled"
within the meaning of the Act. (R. at 7-25).

On April 27, 2010, Brest sought administrative review of
the ALJ's decision by filing a timely request for review with
the Appeals Council. (R. at 4-5). The Appeals Council denied
the request for review on July 12, 2011, thereby making the
ALJ's decision the final decision of the Commissioner in this
case. (R. at 1). Brest commenced this action on September 15,
2011, seeking judicial review of the Commissioner's decision.

2

(ECF No. 1). Brest and the Commissioner filed motions for
summary judgment on January 11, 2012, and March 14, 2012,
respectively. (ECF Nos. 9 & 14). These motions are the subject
of this memorandum opinion.

## III. Standard of Review

This Court's review is plenary with respect to all
questions of law. *Schaudeck v. Commissioner of Social Security
Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect
to factual issues, judicial review is limited to determining
whether the Commissioner's decision is "supported by substantial
evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43,
46 (3d Cir. 1994). The Court may not undertake a *de novo* review
of the Commissioner's decision or re-weigh the evidence of
record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-
1191 (3d Cir. 1986). Congress has clearly expressed its
intention that "[t]he findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,
shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence
"does not mean a large or considerable amount of evidence, but
rather such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion." *Pierce v. Underwood*, 487
U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal
quotation marks omitted). As long as the Commissioner's
decision is supported by substantial evidence, it cannot be set

3

aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d

4

Cir. 1983).  The administrative law judge must consider all
medical evidence contained in the record and provide adequate
explanations for disregarding or rejecting evidence.  *Weir on
Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984);
*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant
to its legislatively-delegated rulemaking authority, has
promulgated a five-step sequential evaluation process for the
purpose of determining whether a claimant is "disabled" within
the meaning of the Act.  The United States Supreme Court
recently summarized this process by stating as follows:

> If at any step a finding of disability or non-
> disability can be made, the SSA will not review the
> claim further.  At the first step, the agency will
> find non-disability unless the claimant shows that he
> is not working at a "substantial gainful activity."
> [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant
> shows that he has a "severe impairment," defined as
> "any impairment or combination of impairments which
> significantly limits [the claimant's] physical or
> mental ability to do basic work activities."  §§
> 404.1520(c), 416.920(c).  At step three, the agency
> determines whether the impairment which enabled the
> claimant to survive step two is on the list of
> impairments presumed severe enough to render one
> disabled; if so, the claimant qualifies.  §§
> 404.1520(d), 416.920(d).  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four,
> at which the SSA assesses whether the claimant can do
> his previous work; unless he shows that he cannot, he
> is determined not to be disabled.  If the claimant
> survives the fourth stage, the fifth, and final, step
> requires the SSA to consider so-called "vocational
> factors" (the claimant's age, education, and past work

5

experience), and to determine whether the claimant is
capable of performing other jobs existing in
significant numbers in the national economy.  §§
404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157

L.Ed.2d 333 (2003)(footnotes omitted).  Factual findings

pertaining to all steps of the sequential evaluation process are

subject to judicial review under the "substantial evidence"

standard.  *McCrea v. Commissioner of Social Security*, 370 F.3d

357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative

determination is sought, the agency's decision cannot be

affirmed on a ground other than that actually relied upon by the

agency in making its decision.  In *Securities & Exchange*

*Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91

L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple
> but fundamental rule of administrative law.  That rule
> is to the effect that a reviewing court, in dealing
> with a determination or judgment which an
> administrative agency alone is authorized to make,
> must judge the propriety of such action solely by the
> grounds invoked by the agency.  If those grounds are
> inadequate or improper, the court is powerless to
> affirm the administrative action by substituting what
> it considers to be a more adequate or proper basis.
> To do so would propel the court into the domain which
> Congress has set aside exclusively for the
> administrative agency.

*Chenery Corp.*, 332 U.S. at 196.  The United States Court of

Appeals for the Third Circuit has recognized the applicability

6

of this rule in the Social Security disability context.
*Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).
Thus, the Court's review is limited to the four corners of the
ALJ's decision.   *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491
(W.D.Pa. 2005).

## IV.   The ALJ's Decision

In his decision, the ALJ determined that Brest had not
engaged in substantial gainful activity subsequent to his
alleged onset date.  (R. at 12).   Brest was found to be
suffering from depression, chronic kidney disease, coronary
artery disease, diabetes, hepatitis A, hepatitis C,
hypertension, neuropathy, chronic obstructive pulmonary disease
("COPD"), and "status post inguinal hernia repair."  (R. at 12).
These impairments were deemed to be "severe" under the
Commissioner's regulations.  (R. at 12); 20 C.F.R. §§
404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).
The ALJ concluded that Brest's impairments did not meet or
medically equal an impairment listed in 20 C.F.R. Part 404,
Subpart P, Appendix 1.  (R. at 12-14).

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the
ALJ assessed Brest's "residual functional capacity"[1] as follows:

---

[1] The term "residual functional capacity" is defined as "that which an
individual is still able to do despite the limitations caused by his or her
impairments."  *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir.
1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a).   The same
residual functional capacity assessment is used at the fourth and fifth steps

7

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform a limited range of
> light work as defined in 20 CFR 404.1567(a) and
> 416.967(a). Specifically, the claimant can lift 10
> pounds occasionally and five pounds frequently; can
> sit for four hours, can stand/walk for four hours,
> must be afforded the option to sit or stand at work;
> must be able to change positions from sitting or
> standing at a maximum frequency of every 30 minutes;
> is limited to simple, routine, and repetitive work not
> performed in a fast-paced production environment; can
> make only simply [sic] decisions; must be in a
> relatively low-stress environment; and must have only
> occasional interaction with supervisors, coworkers,
> and the general public.

(R. at 14). Brest had "past relevant work"[2] experience as a

cashier, dishwasher, driver, gas service station attendant,

factory laborer, telemarketer, tire technician and newspaper

vendor. (R. at 47). In response to a hypothetical question

describing an individual with Brest's limitations, Dr. Monaco

testified that such an individual could not perform the duties

of Brest's prior positions. (R. at 48). Therefore, it was

determined that Brest could not return to his past relevant

work. (R. at 23).

Brest was born on July 24, 1964, making him forty-three

years old on his alleged onset date and forty-five years old on

---

of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii),
416.945(a)(5)(i)-(ii).
[2] "Past relevant work" is defined as "substantial gainful activity" performed
by a claimant within the last fifteen years that lasted long enough for him
or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).
The Commissioner has promulgated comprehensive regulations governing the
determination as to whether a claimant's work activity constitutes
"substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-
416.976.

the date of the ALJ's decision. (R. at 36-37). He was classified as a "younger person" under the Commissioner's regulations.[3] 20 C.F.R. §§ 404.1563(c), 416.963(c). He had the equivalent of a high school education[4] and an ability to communicate in English. (R. at 37, 137, 143); 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Brest could work as a bracelet machine operator, document preparer or bench assembler. (R. at 24). Dr. Monaco's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[5]

## V. Discussion

Although Brest alleged that he had become "disabled" on August 12, 2007, he apparently continued to work on a part-time basis until September 7, 2008. (R. at 138). The ALJ determined that the work performed by Brest during the intervening period of time had not risen to the level of substantial gainful

---

[3] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).

[4] Brest received his General Educational Development ("GED") certification in 1987. (R. at 37, 143).

[5] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

activity. (R. at 12). The record indicates that Brest's work hours were reduced on August 12, 2007, because he was starting to experience pain, discomfort and limited mobility. (R. at 138).

Brest learned in September 2008 that he was suffering from diabetes mellitus. (R. at 275). His treating podiatrist, Dr. James F. Rupp, examined him on January 20, 2009. (R. at 275). Based on the findings of his examination, Dr. Rupp determined that Brest had peripheral neuropathy. (R. at 275). Dr. Sheila Burick, Brest's primary care physician, noted on January 23, 2009, that Brest was concerned that his peripheral neuropathy would inhibit his ability to work. (R. at 456). Dr. Zafar Iqbal, Brest's treating nephrologist, observed during that same period of time that Brest had edema in his legs, ankles and feet. (R. at 412, 414). On January 27, 2009, Brest told Dr. Patricia J. Jarrett, his treating psychiatrist, that he sometimes took walks "in order to keep his legs functional." (R. at 379). Nerve conduction studies performed by Dr. Jay H. Kim on April 16, 2009, confirmed that Brest had peripheral neuropathy in both legs. (R. at 269).

Dr. Elizabeth A. Piccione, a cardiologist, examined Brest on January 29, 2009. (R. at 492). Brest complained of "a knife-like pain" in the left side of his chest. (R. at 492). Dr. Piccione recommended that he undergo a left heart

10

catheterization. (R. at 492). The procedure, which was performed in February 2009, yielded evidence of "mild coronary artery disease." (R. at 487).

On February 2, 2009, Brest told Erin Ridley ("Ridley") and Michelle Kelly Thompson ("Thompson"), his mental health therapists, that he wanted to go back to work in order to provide for his family. (R. at 378). During a follow-up session with Ridley and Thompson conducted one week later, however, Brest expressed frustration because Dr. Jarrett had refused to support his efforts to secure DIB and SSI benefits. (R. at 376). In a treatment note dated February 10, 2009, Dr. Jarrett stated that while Brest had claimed that his walking difficulties would prevent him from working, he had nevertheless been "walking around at Wal-Mart" without considerable difficulty. (R. at 375). Dr. Jarrett further noted that Brest was "trying desperately to get disability" benefits in order to alleviate his "financial stress." (R. at 375).

During the spring of 2009, Brest had inguinal hernias in both sides of his groin. He was advised to have the hernias surgically repaired. On March 23, 2009, Dr. Piccione verified that there were "no cardiovascular contraindications to the proposed procedure." (R. at 491). Although Brest was originally supposed to undergo a single procedure to repair both hernias, that proposed course of action was abandoned after he

11

was incorrectly told that his health insurance policy would not cover the bilateral procedure. (R. at 327).

On April 7, 2009, Dr. David R. Hofius surgically repaired the hernia on the left side of Brest's groin. (R. at 331-333). The operation was apparently performed at 7:00 P.M. (R. at 327). The timing of the procedure made Brest angry, since his diabetic condition had made it difficult for him to refrain from eating while waiting for the surgery to begin. (R. at 327). He was also upset because the attending medical personnel had catheterized him without his knowledge and made a larger incision on his groin than he deemed to be necessary. (R. at 368). Because of his dissatisfaction with Dr. Hofius, Brest decided to have a different surgeon repair his other hernia. (R. at 327, 363).

During a therapy session with Ridley and Thompson conducted on May 5, 2009, Brest reported that he had stopped taking the medications that Dr. Jarrett had prescribed for him. (R. at 363). He complained that the medications had made him too tired to function. (R. at 363). Two days later, Dr. William N. Gilleland examined the right side of Brest's groin. (R. at 327). Brest complained of testicular pain and cramps while walking. (R. at 328). Dr. Gilleland recommended that Brest undergo surgery to repair the hernia. (R. at 327). Brest told Ridley and Thompson on May 11, 2009, that he was angry at Dr.

Jarrett because of her refusal to support his applications for
DIB and SSI benefits.  (R. at 362).

On May 26, 2009, Dr. Gilleland surgically repaired the
hernia on the right side of Brest's groin.  (R. at 318-321).
After a follow-up examination conducted on June 4, 2009, Dr.
Gilleland noted that Brest was "doing well," that his surgical
incision was "well healed," and that he had expressed only
"minimal complaints of some mild discomfort."  (R. at 327).
Brest returned to Dr. Gilleland's office on July 16, 2009, and
complained of pain around the incision whenever his pants made
contact with the right side of his groin.  (R. at 316).  Dr.
Gilleland's examination revealed "[n]o evidence of infection."
(R. at 316).

During the summer of 2009, Brest sought treatment from Dr.
Roberto Inglese in order to alleviate the symptoms of his
hepatitis C.  (R. at 281).  He was started on "therapy with
interferon and Ribavirin."  (R. at 281).  Three weeks after
starting his therapy, Brest experienced "retrosternal chest
pain" and numbness in his left arm.  (R. at 280).  Although
Brest was hospitalized and placed on a "cardiac monitor" shortly
thereafter, he ultimately left the hospital against medical
advice because he believed that the monitor was not working
properly.  (R. at 44, 280).  On August 5, 2009, Dr. Inglese
expressed uncertainty as to whether Brest's symptoms had been

13

caused by his hepatitis C therapy, or whether they had been solely attributable to his coronary artery disease. (R. at 280). A cardiac stress test performed on August 21, 2009, yielded normal results. (R. at 489-490). Dr. Piccione later confirmed that the stress test had "showed no significant perfusion abnormality." (R. at 487).

On September 28, 2009, Brest informed Kara L. Cook ("Cook"), a mental health therapist, that his neuropathy had been bothering his legs "more than usual." (R. at 348). Brest told Cook on November 30, 2009, that the pain in his legs was starting to interfere with his ability to do household chores. (R. at 339). Dr. Anna Kosturek, a treating psychiatrist, reported on December 15, 2009, that Brest's feet would hurt "for the remainder of the day" whenever he tried to walk for extended periods of time. (R. at 335).

At the hearing, Brest testified that he frequently experienced pain and numbness in his feet while standing in check-out lines at grocery stores. (R. at 38-39, 46). He stated that he did not typically seek treatment in emergency rooms because there was nothing that could be done to ease his pain. (R. at 39). Brest further asserted that he continued to suffer pain in his groin. (R. at 41). He testified that he sometimes needed to prop his feet up in bed in order to stay comfortable. (R. at 38-39).

14

The ALJ did not find Brest's subjective complaints of disabling pain to be fully credible. (R. at 17). Brest takes issue with the ALJ's evaluation of the testimonial evidence. (ECF No. 10 at 7). The crux of Brest's argument is that the ALJ wrongfully discounted his complaints of pain in determining that he could perform the duties of a full-time job. (*Id.*).

An administrative law judge "must give serious consideration to a claimant's subjective complaints of pain" whenever the record contains objective evidence of an impairment that could reasonably be expected to produce pain. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). The record in this case clearly contains evidence of impairments that could cause an individual to suffer pain. Brest argues that the ALJ failed to give proper consideration to the pain described at the hearing. (ECF No. 10 at 7).

Under the present circumstances, the argument advanced by Brest provides no basis for setting aside the ALJ's decision. Although the ALJ had a duty to properly consider Brest's subjective complaints of pain, he was not required to credit them in every respect. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 363 (3d Cir. 2011). A careful review of the record reveals that the ALJ gave serious consideration to Brest's testimony. In his residual functional capacity assessment, the ALJ determined that Brest needed a sit/stand

option, and that he needed to change positions every thirty minutes.  (R. at 14).  These limitations were clearly designed to accommodate some of the symptoms described by Brest at the hearing.  The ALJ properly accounted for Brest's subjective complaints by concluding that his "foot and leg pain would limit his ability to stand and walk for long periods of time."  (R. at 17).

Brest's treating physicians did not detail his physical limitations on a function-by-function basis.  Indeed, Brest testified that he had never asked his treating physicians to do so.  (R. at 43).  In any Social Security disability case, the claimant has the burden of establishing that his or her medically determinable impairments result in specific functional limitations.  *Baker v. Astrue*, 617 F.Supp.2d 498, 510 (E.D.Ky. 2008).  Brest's treating physicians never opined that his physical impairments were sufficiently severe to prevent him from engaging in the limited range of "sedentary"[6] to "light"[7]

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

work activities reflected in the ALJ's residual functional
capacity assessment.  Dr. Jarrett specifically observed that
since Brest was able to walk for the purpose of keeping his legs
functional, his leg impairments would not prevent him from
returning to work.  (R. at 379).  On the basis of the existing
record, it cannot be said that the ALJ acted unreasonably in
determining that Brest retained the ability to perform the
duties of the positions identified by Dr. Monaco.

Brest testified that his depression interfered with his
ability to work.  (R. at 41).  He stated that his depression
frequently caused him to remain home and avoid contact with
others.  (R. at 42).  The ALJ determined that Brest's depression
had resulted in "only mild to moderate limitations."  (R. at
20).  Brest's subjective complaints were partially credited with
a limitation restricting him to only "occasional" interaction
with supervisors, co-workers, and members of the general public.
(R. at 14).  These limitations were properly included within the
ALJ's residual functional capacity assessment.[8]  (R. at 14).  Dr.

_____

[8] In order for a vocational expert's testimony to constitute probative evidence
of the existence of jobs in the national economy that are consistent with a
claimant's residual functional capacity, the hypothetical question eliciting
that testimony must incorporate all of the claimant's limitations.  *Ramirez
v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004).  Although the ALJ
ultimately concluded that Brest needed to work "in a relatively low-stress
environment," he did not specifically reference that limitation in his
hypothetical question to Dr. Monaco.  (R. at 14, 48).  In his hypothetical
question, however, the ALJ described an individual who needed to work in an
environment "with relatively few workplace changes."  (R. at 48).  That
limitation was not included within the ALJ's final assessment of Brest's
residual functional capacity.  (R. at 14).  Depending on the precise

Manella Link, a non-examining psychological consultant, opined on January 6, 2009, that Brest could "get along with others in the workplace," "make simple decisions," and "meet the basic mental demands of competitive work on a sustained basis." (R. at 253). Brest's treating psychiatrists and therapists did not express a different opinion. Dr. Jarrett clearly believed that Brest was able to work. (R. at 375-376, 379). Since no treating source contradicted Dr. Link's assessment, the ALJ was clearly entitled to rely on that assessment in determining that Brest was not disabled. (R. at 22); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision denying Brest's applications for DIB and SSI benefits is "supported by substantial evidence" and will be affirmed. 42

difference between a limitation restricting a claimant to a "low-stress" work environment and a limitation restricting him or her to "relatively few workplace changes," the ALJ's hypothetical question to Dr. Monaco was either more or less restrictive than his ultimate assessment of Brest's residual functional capacity. Brest does not challenge the sufficiency of Dr. Monaco's testimony on the ground that the ALJ's residual functional capacity finding was more restrictive than the hypothetical question posed to Dr. Monaco at the hearing. Instead, Brest brings a direct challenge to the ALJ's assessment of his residual functional capacity. (ECF No. 10 at 5-9); *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005)(recognizing a distinction between a hypothetical question that fails to include established limitations and a hypothetical question that is based on an erroneous assessment of a claimant's residual functional capacity). Since Brest does not contend that the ALJ's hypothetical question to Dr. Monaco failed to adequately describe his need to work "in a relatively low-stress environment," the Court has no occasion to consider whether the discrepancy between the hypothetical question and the residual functional capacity finding would otherwise require a remand for further proceedings. *Laborers' International Union of North America, AFL-CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)(explaining that an issue is waived if a party does not raise it in his or her opening brief).

U.S.C. § 405(g).  Brest's motion for summary judgment (*ECF No. 9*) will be denied, and the Commissioner's motion for summary judgment (*ECF No. 14*) will be granted.

AND NOW, this 22nd day of May, 2012, IT IS HEREBY ORDERED that the Plaintiff's motion for summary judgment (*ECF No. 9*) is **DENIED,** that the Defendant's motion for summary judgment (*ECF No. 14*) is **GRANTED,** and that the final decision of the Commissioner of Social Security is **AFFIRMED.**

> BY THE COURT:
>
> s/Gary L. Lancaster
> _____,C.J.
> Gary L. Lancaster
> Chief United States District Judge

cc:  All counsel of record